```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KENNETH PAUL CRAWFORD, SR., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 14-2545 (JBS/JS) |
| COMPASS GROUP USA, | |
| Defendant. | **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

Before the Court is Defendant Compass Group USA's ("Compass") motion for summary judgment. [Docket Item 44.] In this case, Plaintiff Kenneth Paul Crawford, Sr. seeks to enforce a judgment issued by the International Commercial Court ("ICC"), a private alternative dispute resolution organization, in the amount of $900,000 against Compass, his former employer. Compass asserts that it is entitled to judgment as a matter of law because it never agreed to submit any disputes to the ICC and thus any judgment against it issued by the ICC is invalid and unenforceable. Because Plaintiff has failed to identify any evidence in the record of an agreement between the parties to submit disputes to the ICC or any other indicia of Compass's consent to be bound by a decision of the ICC, the Court will grant Compass's motion for summary judgment. The Court finds as follows:

1.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as alleged by Plaintiff.

2.   On April 21, 2014, Plaintiff filed a Complaint [Docket Item 1] seeking enforcement of a judgment issued by the ICC on March 3, 2014. After Compass filed a motion for a more definite statement, Plaintiff submitted an Amended Complaint including two documents which purportedly form the basis of the $900,000 judgment against Compass: 1) "Abstract of Administrative Judgment" and 2) "Affidavit in Support of Notice of Conditional Acceptance." [Docket Item 20.] Compass filed the instant motion for summary judgment on January 9, 2015. [Docket Item 44.] Plaintiff filed opposition [Docket Item 47] and Compass filed a reply [Docket Item 51.]

3.   Because Plaintiff has submitted neither a responsive statement of material facts, nor a supplemental statement of disputed material facts, the Court deems the facts as set forth in Compass's Local Civil Rule 56.1 statement undisputed for purposes of the instant summary judgment motion. L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").[1]

---

[1] Indeed, Plaintiff has not provided any statement of facts with citations to affidavits or other evidence in the record. Although the Court construes his "Notice of Conditional Acceptance and Answer to Respondent's Motion for Summary Judgment" [Docket Item 47] as his opposition to Compass's motion for summary judgment and this document ostensibly asserts that

2

Compass is a foodservice management and support services company. (Def. Statement of Material Facts ("Def. SMF") [Docket Item 44-2] ¶ 1.) Compass hired Plaintiff in or around October, 1998 and his employment with Compass continued until October, 2010. (Id. ¶¶ 2, 8.) By correspondence dated December 7, 2010, entitled "Terms of Separation from the Employment with Compass Group USA, Inc., Release of Claims and Confidentiality Agreement" ("Separation Agreement"), Compass formalized Plaintiff's separation of employment as of October 15, 2010. (Id. ¶ 13.) The Separation Agreement provided that Plaintiff would receive two weeks' pay if he agreed to its terms, which included a release of all claims against Compass. (Id.) Compass contends that Plaintiff signed the Separation Agreement on December 14, 2010 and thereafter received the severance pay specified therein. (Id. ¶¶ 14-15.)

    4.   Plaintiff contests that the signature on the Separation Agreement is his. Whether such a Separation Agreement existed is not material to the sole issue in this motion, namely, whether Plaintiff's "judgment" against Compass in the private dispute resolution organization is enforceable against Compass, as explained below.

---

Compass has failed to identify "verifiable evidence" supporting its entitlement to judgment as a matter of law, this document is not responsive to Compass's 56.1 statement.

5.   Plaintiff did not work for Compass in 2011 or 2012, but applied for approximately twelve positions with Compass during that time. (Id. ¶¶ 16-17.) Beginning in September, 2012, Plaintiff sent a series of correspondence to Compass seeking an admission that Compass was liable to Plaintiff in the amount of $100,000, plus two years of salary. (Id. ¶¶ 19-20.) Compass responded by letter and email categorically denying Plaintiff's claims and allegations and rejecting any basis for liability. (Id. ¶ 23.) Two additional exchanges of correspondence between the parties followed which were substantially similar to the first. Plaintiff sought an admission of liability and Compass categorically denied Plaintiff's claims and allegations. (Id. ¶¶ 24-25.) The correspondence Plaintiff sent to Compass during this period appears to be an effort to establish the terms of his separation from Compass based on his assertion that no separation agreement had been executed between the parties. Plaintiff maintained instead that the Separation Agreement signed on December 14, 2010 was fraudulent and/or a forgery.

6.   The ICC's now-defunct website described the ICC, established in December, 2012, as "the principal judicial organ of the Sovereign Freeman Commissions ('SFC')." (Id. ¶ 30.) The ICC purported to be a "Court of Record established under the Common Law," which "provides an alternate dispute resolution forum for the adjudication of judicial and administrative

4

proceedings." (Id. ¶ 31.) Administrative proceedings commence when "one or more parties to a commercial dispute petitions the Court . . . to make determinations based on specific agreed upon terms and conditions and the facts and evidence established by records." (Id. ¶ 31.) Article VI(1) of the ICC's Rules provides, "Where the parties have agreed to submit to adjudication under the Rules, they shall be deemed to have submitted *ipso facto* to the Rules in effect on the date of commencement of the adjudicatory proceedings, unless they have agreed to submit to the Rules in effect on the date of their adjudication agreement." (Id. ¶ 32.)

    7.    In August, 2013, Plaintiff entered an agreement with ICC to resolve his claim that the Separation Agreement with Compass bore a forged signature. (Id. ¶ 35.) Plaintiff concedes that this agreement was solely between him and the ICC. (Id.) It was not signed by Compass. (Id.) Indeed, Compass never agreed to resolve any disputes in the ICC, including any disputes with Plaintiff. (Id. ¶ 33.) Plaintiff admits that he never saw or heard anything suggesting that Compass agreed to arbitration or adjudication through ICC. (Id. ¶ 34.) Plaintiff appears to have unilaterally initiated proceedings in the ICC on August 30, 2013. (Id. ¶ 36.) In response, Compass notified Plaintiff and the ICC by letters dated September 10, 2013 that it "absolutely and categorically declines the Request for Adjudication and **does**

5

**not** agree to have this matter adjudicated by the International Commercial Court for the Sovereign Freeman Commission." (Id. ¶ 37) (emphasis in original). Compass further noted that it "**does not** consent to subject matter or personal jurisdiction" in the ICC. (Id.) (emphasis in original).

8.  Plaintiff then sent Compass a so-called "Notice of Conditional Acceptance" demanding certain "proofs." (Id. ¶ 38.) Compass responded by again denying any contract between the parties to resolve disputes in the ICC and rejecting the ICC's jurisdiction over any such disputes. (Id. ¶ 39.)

9.  Nevertheless, Plaintiff attaches to his Amended Complaint an "Abstract of Administrative Judgment," seemingly issued by the ICC, identifying Compass as a "Judgment Debtor." (Id. ¶ 41.) This document purportedly establishes a so-called judgment against Compass with damages to Plaintiff in the amount of $900,000. The $900,000 award consists of $50,000 for Plaintiff's annual salary for each 2010 and 2011; $50,000 for "Dishonor in commerce;" $50,000 for "Collusion;" $50,000 for "Racketeering;" $50,000 for "Conspiracy;" and $600,000 for treble damages. (Id. ¶ 43.) At his deposition, Plaintiff could not explain the basis for the $900,000 judgment and stated that he had "no idea" what conduct and by whom constituted collusion, racketeering, conspiracy or any of the above-labeled misconduct. (Id. ¶¶ 45-50.)

10. In its motion for summary judgment, Compass argues that the $900,000 judgment Plaintiff seeks to enforce in this action is invalid and unenforceable because Compass never agreed to resolve any dispute in the ICC. Because Plaintiff claims that the ICC provided a forum for alternative dispute resolution ("ADR"), the Court's analysis is guided by principles applicable to the most prevalent form of ADR – arbitration – and the determination of validity and enforceability of arbitration awards.

11. Section 2 of the Federal Arbitration Act states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009) (citing Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 331 (3d Cir. 2014) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). "[A]n

7

arbitrator has the power to decide an issue only if the parties have authorized the arbitrator to do so." Id.

12. The question of whether the parties agreed to arbitrate is governed by state law principles regarding formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under New Jersey law, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). In the employment context, an arbitration agreement "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003).

13. This is not a close question. In the present case, Plaintiff has identified no evidence of any agreement by Compass to resolve disputes in the ICC.[2] It is clear instead, as a matter

---

[2] Plaintiff's opposition to Compass's motion for summary judgment consists of three documents: 1) "Notice of Conditional Acceptance and Answer to Respondents Motion for Summary Judgment;" 2) "Affidavit in Support of Notice of Conditional Acceptance;" and 3) "Memorandum of Law for Manditory [sic] Judicial Notice." [Docket Items 47 & 48-1.] To the extent the Court can glean any coherent meaning from these documents, Plaintiff appears to argue that Compass consented to the jurisdiction of the ICC "through the course of performance" and that despite numerous opportunities, Compass has failed to present any "verifiable evidence" showing its entitlement to summary judgment. Plaintiff also reiterates his allegation that the signature on the December, 2010 separation agreement is a forgery, as supported by the findings of his handwriting expert.

of law, that the parties did not agree to submit any dispute to the ICC. As such, there is simply no enforceable contract between the parties to submit to ADR in the ICC. The only evidence of an agreement in the record is Plaintiff's unilateral attempt to have the ICC address his claim that the December, 2010 Separation Agreement contained a forged signature. Compass did not agree to submit this dispute, or any other, to the ICC. To the contrary, Compass consistently and unequivocally denied Plaintiff's claims and allegations beginning in September, 2012. Moreover, Compass repeatedly refused to permit the ICC to adjudicate any dispute between the parties and rejected the

---

Plaintiff's arguments are belied by the record in this case which is entirely devoid of any indication of an agreement between the parties to submit disputes to the ICC. The record is replete with evidence to the contrary – that Compass clearly and repeatedly denied Plaintiff's claims and allegations and rejected the jurisdiction of the ICC over any dispute involving Compass. The Court need not address in detail the report of Plaintiff's handwriting expert, Mark Songer. (Pl. Ex. A [Docket Item 47]). Plaintiff failed to disclose Songer as an expert, and the time to do so expired under the Court's scheduling orders. Moreover, even if Songer's report were timely, it is invalid under Rule 26(a)(2)(B) because it fails to include his qualifications, a list of all publications in the past ten years, a list of other cases where he testified as an expert in the last four years, and a statement of the compensation to be paid for his study and testimony in this case. The Songer report is thus not admissible evidence for purposes of opposing summary judgment. In any event, even if the Songer opinion were deemed admissible, the question of whether Plaintiff signed the December, 2010 separation agreement is irrelevant and immaterial to the central issue to be resolved in the pending motion: whether the parties agreed to submit disputes to the ICC such that the so-called judgment issued by the ICC against Compass is enforceable.

ICC's subject matter and personal jurisdiction. Plaintiff does not dispute these facts. Therefore, even when viewing the evidence most favorably to Plaintiff, as it must for purposes of Defendant's summary judgment motion, the Court finds no evidence of an agreement between the parties to submit disputes to the ICC.[3] Consequently, the judgment of the ICC is invalid and unenforceable. See Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 220 (3d Cir. 2012), aff'd, 133 S. Ct. 2064 (2013) (noting that arbitration award is unenforceable when the arbitrator "strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice'") (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010). The same principle applies when an alternative dispute resolution organization or self-proclaimed court attempts to apply its own version of justice to a dispute that was never subject to the consent of all parties.

---

[3] Compass notes, and the Court agrees, that the judgment is also unenforceable because it appears to have been issued in disregard of the ICC's own rules, which required the consent of all parties. See Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969) (discussing various grounds to vacate an arbitration award, including "manifest disregard of the agreement" between the parties).

14.  Costs will be taxed in favor of Defendant as prevailing party pursuant to Rule 54(d), Fed. R. Civ. P., and L. Civ. R. 54.1.[4]

15.  For the reasons explained in the foregoing, the Court will grant Compass's motion for summary judgment.


**March 6, 2015**                  **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                             Chief U.S. District Judge

---

[4] Whether Plaintiff's filing and prosecution of this case, seeking to enforce a unilaterally obtained judgment of a self-proclaimed but apparently defunct "court of record," was frivolous and vexatious under 28 U.S.C. § 1927, or without reasonable basis in fact or law under Rule 11, Fed. R. Civ. P., will not be addressed at this time as Defendant has not sought imposition of such sanctions. The award of statutory costs under Rule 54(d), Fed. R. Civ. P., on the other hand, is routinely made in favor of the prevailing party – here Defendant Compass – unless there is good reason not to do so. 28 U.S.C. § 1920. The Court is unaware of any reason that costs should not be awarded to the Defendant under the circumstances of this case.